Thank you, Your Honor. May it please the Court, Devin Burstein from Federal Defenders in San Diego. On behalf of Mr. Ramirez, I hope that the Court was able to receive the little statutory cheat sheet that I handed out via your clerk. And I think that will really help in this argument. Because I think, really, everything that's needed to decide this case is actually within the four corners of the desk. Counsel? I thought you had a really strong argument, except for a case that we have called Cade, C-A-D-E. Okay. Yes. Could you talk about that? It looks as though that Cade case means you can just keep going on and off supervised release and revocation forever. Right. Deal with Cade. Yes. Actually, Cade doesn't, is not a case about custody time on supervised release. What Cade is very specific on is what the statute says, is that the time out of custody on supervised release does not count in the aggregation principle. And in fact, actually, if you look at page 467 of Cade, you get to see that as the custodial period, Cade does apply the aggregation principle specifically. Actually, Cade does exactly what every kind of circuit has said was the law, and that is for the custodial time, the time spent on revocations, because there are multiple revocations in Cade, as there are here, for the custodial period, that is aggregated. And that continues to be the law post-Protect Act. And I think we see the post-Protect Act 3583E3, and we can continue to see. So what you mean is supervised release can go on forever under Cade because of, I think it's 466, but custody time, you're limited to what? I think under Cade, two years each time, or what? Under Cade, it would be, well, under Cade, it would actually be two years in the aggregate for a Class C or Class C. So there's a cap. There's a cap. Supervised release doesn't say, Cade actually doesn't say that supervised release can go on. There were some, the arguments in Cade were that the time spent, it was an interesting argument, the time, Cade's lawyer argued, look, the time spent in custody for the underlying offense, that should count. And then he said the time spent out of custody on supervised release, that should count in the aggregate time. And that's where he lost. And that's where he lost. Cade is actually, is not on point as to this. Cade specifically actually applies the aggregation principle, which was the well-established law in this circuit, as well as every other circuit. Okay. The question I have is what is the maximum term of supervised release under 960 and why? Okay. If we look to 960, and we're here in V4, and I've got a better term. Not less than two years if the controlled substance is in 1, 2, or 3. Not less than two years. What's the max? Well, we can see that in the middle of the page. At the authorized term of supervised release. We're in the middle of the page. Now we're up in 3583. Right. It's not more than three years. So we have a classic range. I mean, Congress, as plain language as it can be, we have not less than two years under 960. Notwithstanding 3583, it says not less than two years. So if we look on, then we go up to 3583B2, and we see for a class C or D, we're at D, not more than three years. Well, here's the problem. Then you get right into the except as otherwise provided language. Exactly. And so why isn't it provided in 960 otherwise that you're dealing with a minimum of two and a maximum of life? Isn't that the implication of 960? I think that the except as otherwise provided is an excellent point. Except as otherwise provided. So 960 says, look, even though. It's not less than two.  Even though. So you can't. It's not more than three. So you can't get one year except as otherwise provided. Why can't you give five, six, seven, eight, nine, ten? Well, we see that in 960. Excuse me, in 3583, there's a cap put at D. So we have a not less than. Well, that's a general statute, and then you get a specific one, 960. And I'm grappling with this, not less than two, and I'm going to ask the government. What's the maximum? Where do we look to find that? I mean, it seems implied from not less than two that there's no cap until somebody expires. Well, I think we can look to other statutes. I mean, if Congress so we look at looking at B4, just a simple thing. We have less than 50 kilograms of marijuana. Now, Congress, we know from statutes such as 3583K, we know when they want to have life for a relatively minor felony, we're talking about a D, they say not less than five or life. I mean, if you want something to say not less than two to equal life, Congress certainly knows how to say it. And there's no question that Congress is aware of the authorized terms in 3583D. There's no question that they have not less than two. I mean, if we give, as the, you know, the canons of statutory construction tell us, if we say that we have to give meaning to each word, if you have not less than two, and then the general statute says not more than three, why go around it to create something where we have to ignore 3583B? I mean, Congress doesn't say life. If they wanted life for less than 50 kilograms of marijuana, a statute where the maximum sentence in prison is five years, surely they would have said not less than two up to life. I mean, there's no indication that B was supposed to be ignored. And I really, I think so that we're left with the maximum authorized term being three years. And that brings us back. So what you're saying is when you read them together, it's not less than two and not more than three. Exactly, Your Honor. Just plain language. And I think that brings us now back, you know, with the Court's indulgence, to E3 and to what happened with the PROTECT Act, which is, I think, really the crux of what's going on in this case. So if we turn to E3, we have a very simple, again, very simple statutory framework. We say, look, let's just stay with the Class D. Somebody can, Mr. Ramirez, somebody can be sentenced, if they violate supervised release, they can be sentenced to serve in prison. And here we go, the most central part. All or part of the term of supervised release authorized by statute for the offense. Then we see. Which relates to B, you're saying. Go ahead. Yes, Your Honor, exactly. And then we go and we see. So B, that's not more than three years. And then the statute now, in its consistent version, as it was inconsistent before the PROTECT Act, says, well, that's fine. So you can get a maximum of three years. But on any particular revocation, any such revocation, those are the four words added. That's it. Any four, you can get not more than two years in prison. So we have a situation where you have the aggregate, the maximum term of supervised release authorized, and then on any such revocation, you have your limits. So you can't, you can get two years on each one under the PROTECT Act, but no more than three in the aggregate. And that correlates very well with subsection H, which also contains the same aggregation principle. And we don't. What you say makes perfect sense to me. It seems to me a logical, coherent reading of the statute. However, when I read Cade, which of course we are bound to follow, you've got this possibility, as far as I can tell, of repeated supervised release forever. And supervised release, part of the deal on supervised release is you violate, you go to jail. I don't know what it means to have supervised release where you can't get any more time if it's revoked. Well, Your Honor, I would like to reserve some time, but I would like to briefly answer your question. Because up until now, it's always been the case that aggregate, that the limits were capped. It's still the case under H. So you could still have a situation where you could get further supervised release, but no prison to follow. I mean, it's always been the case that that could happen. And Cade, briefly, Your Honor, does not say that you can have supervised release forever. In fact, Cade specifically applies the aggregation principle when it comes to custodial sentences. And that's at 467 of Cade. Which words here? I honestly don't have the exact. I just remembered to write down that it was page 467. What it writes on 467 in Circle was that 3583 imposes no statutory maximum on the aggregate amount of time that a defendant may spend on supervised release. Right. That's about. And when you actually see that there's a calculation of the time there in Cade, talking about the time, that can be on the custodial time and how much can be left. You'll see, I think it might be within parentheses about the amount of time. Cade does apply the aggregation principle. But just specifically, and again, I. I don't see it. That's why I want to know. Okay. I really would like to reserve a little bit of time, Your Honor, if it pleases the Court. But I just want to say that Cade, that quote you just talked about, that's what that's saying is 3583 E3. That's about custodial time. It doesn't limit the time on supervised release. Why don't you take your time so you'll have something for rebuttal and find that language. Yeah. It's your. Do you have the Cade case with you? I don't think I do. You don't? I have a lot of cases with me. Clerks, take note. The government will give you a copy. If somebody has a copy, maybe they could hand it to him. Can you give me the sign-up number? Government have a copy? 236 F3rd 463. 236 F3rd 463. 463. Counsel? If it pleases the Court, Stephen DeSalvo, Assistant United States Attorney, Southern District of California. The appellant in this case, Your Honors, was not cited. Before you get too far in, would you explain how you get 350 words out of 28J's limitation and apply that to what you filed with us? Well, Your Honor, let me just state that there was very important case authority, and I felt that I could not present it without adequately explaining the context. I see. So you just decided unilaterally to do that. So the rule said one thing, and you felt you needed to do a different thing from what the rule said? Honestly, I relied on my appellant department's instructions about what I could do, and he told me that the letter was sufficient. So the Department of Justice says one thing, the rule in court says another thing? I have to honestly say that I didn't realize there was a 350-word limit until I looked at it last night. You know, whenever anybody says, I honestly, then I'm worried when you don't say honestly if you're not being honest. I was unaware of the 350-word limit until I looked at it last night. Who's your appellant division? Roger Haynes, is he still around? Who's your appellant division? Roger's retired. That's what I thought. The head of our appellant department is Bruce Kassetter. Would you be sure that Mr. What's-his-last-name? Kassetter. Kassetter? He's not the person who advised me. Well, he's the supervisor. Go ahead. Serve him up so we can get him. I don't want to name names. I don't want to name names. I just hope that they're familiar. I'm sorry. Wait a minute. This is not funny. The U.S. Attorney's Office comes and visits. We can stop the clock on this. But, you know, the U.S. Attorney's Office and the Department of Justice meets with this court every once in a while and asks us for constructive suggestions. It's a courtesy we extend to the federal public defender and the Department of Justice as institutional litigants. And they come forward in good faith, and they ask us judges to take our time and sit down with the heads of these various U.S. Attorney's Offices and the Department of Justice, and they ask us for our suggestions. And we tell them things like about 28 J letters and how they would be appropriate. And it's astonishing to me to have you appearing in front of our court and saying, well, I didn't bother to read the rule. What I did was I go talk to somebody in my office. Now, if they're going to put you up to argue a case in the Ninth Circuit, then you have every obligation on your own to read the rules, number one. Number two, whoever you spoke to in the appellate division has an obligation to read the rules and should be held accountable. And number three, the supervisor, who is the kind of person who shows up and meets with us in the court. So there's no hiding of names here. These people need to be told and need to be explained to this court. And speaking for myself, if I need authority from the panel, I'll ask for it. I would like to have some written explanation from the head of the appellate division or the U.S. attorney in San Diego explaining why this happened and how it won't happen again. Your Honor, thank you. I just want to tell you that the person who approved the letter and advised me that it complied with 28 J was Mark Ray. He's an excellent appellate lawyer in our office. He told me that it was essentially it was limited to two pages. I unfortunately relied on his representation. Only last night did I look at the rule and realized that it was 350-word limit. Perhaps he meant to imply that it was or he thought it was 175 words per page. Don't speculate. That's why I asked for a letter. Counsel, I want you to know that my concern with the rule is not merely a technical violation of a technical rule and inadequate respect for the rules, though all that matters. My concern is justice. It is a real injustice for the U.S. Attorney's Office to file a midnight brief, throw everyone in a tizzy right before argument. And that's what this wasn't a proper 28 J letter. 28 J, usually it cites a new case that we need to know about. And all it does is cite it. And we read it. Very often they cite it and attach a Xerox of it so that we don't have to go to Westlaw or Lexis and get it. Occasionally they cite a case that they should have found and didn't find that's an older case. As I recall, that's not what the rule is for, but I don't recall that it explicitly says you can't do that. But they're not briefs. When you file a midnight brief, it's unfair to the other side. It's an injustice. They don't have a fair opportunity to respond. Notice an opportunity to be heard at the heart of due process. And a midnight brief is a good way to deny it to somebody. I think that's why 350 words is in there, to keep out that kind of midnight brief. I entirely adopt what Judge Keinfeld was saying. That was implicit in what I was arguing for. I was not upset for a technical violation. Well, I want to assure the Court my intent was to aid the Court in its consideration of this issue and not to sandbag Mr. Burstein. So I apologize to the Court for this departure from the rule, and I will certainly inform our public department of your concern, and a letter will be written to the Ninth Circuit regarding this issue. Thank you. Thank you, counsel. I'd like to now address the substantive issue in this case. I started by saying that the appellant has not cited a single good authority in support of his claim. You asked about the Cade case. I want to point out that the Cade case does have the language of the statute. The statute is authority. It's the authority. It seems to me that it's a fair interpretation of the statutes taken together, just what he said, that there's a max of three years' supervised release, a minimum of two years' supervised release, and a maximum revocation on any particular revocation of supervised release of two years to serve. And if he can distinguish Cade, which he does, by saying it just says that you can repeatedly apply supervised release terms, not more time to serve on revocation, what's the matter with that? That is authority. It's the statutory words. Well, Cade did address or did discuss the aggregation issue, but he did it in the context of 3583H, which is where some courts have aggregated the custodial time for determining the amount of supervised release that follows or the tail that will follow a revocation. That's a totally different issue than calculating the amount of custodial time following a revocation. If Cade is distinguishable on that ground, it seems to me that kicks away your best authority. Well, the aggregation, though, was in the context of, I emphasize, Section 3583H. And, indeed, the district court applied the aggregation principle, but this court said it was still an open question in footnote 1. What this court said was whether Section 3583H requires the court to credit a defendant with all incarceration time served because of prior revocations or just the incarceration time imposed by the immediate revocation sentence is an open question in the circuit. In that footnote, this court goes on to cite the Eighth Circuit case in Brings Plenty, 188 F. 3rd, 1051. And I point out that the leading case that we cite in our briefs, the Lewis case in the Eighth Circuit, casts considerable doubt on the continuing authority of Brings Plenty. In light of the PROTECT Act that was passed by Congress, and in the PROTECT Act, Congress made it very clear that there is no more aggregation of custodial time. And that act, which was passed in 2000 to 2000. So you're saying that in a case where there's supervised release, a revocation in two years, there can be subsequent supervised release, revocation in another two years, and that can go on for life? Yes, Your Honor. And the reason is, is because, and this is really the fundamental question to court of court, is that Congress did not intend to deprive district courts of the discretion to appropriately punish offenders, especially those who keep violating their supervised release. And indeed, the Supreme Court addressed this very issue in the case of Johnson v. United States, which is cited in my brief, and which Cade relies on heavily. And I'll note that the Cade case quoted Johnson and said, Congress aimed to use the district court's discretionary judgment to allocate supervision to those releases who needed it most. And then the court goes on to quote Johnson. Counsel, that's pretty general policy sentiment. More specifically on the statute, it strikes me, it is counterintuitive that a statute that does not provide for life imprisonment could nevertheless lead to life imprisonment with occasional stints outside until there's a dirty urinalysis or something. And when I read the statute, I have trouble getting your reading, because I don't see what words in the statute lead to your reading. Well, the words of the statute that the appellant relies on are the first part of 3583e3. And it's the government's position that that is simply an empowerment provision where the statute states that when a court, especially sets forth the terms upon which a court can revoke supervised release and impose custody, and it says that the court, quote, may require defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense. That's simply an empowering clause, and it does not expressly or even implicitly reference 3583b. And, indeed, the may have to be. Let's see. If I read that and then I read the statute, the statute authorizes three years of supervised release for the offense. Yes. But this is simply saying 3583 only sets forth the amount of supervised release term. It has nothing to do with the amount of custodial time that may be imposed upon a revocation of supervised release. And I'll point out that it does state that 3583e3, it refers to the statute for the offense, requires the court not only look at 3583 to determine the length of the supervised release term, but the substantive offense for which the defendant was convicted. 960. Yes. 960. And that's why, Arne, I'll go back to the first question I asked. What's the cap on supervised release for 960? It says not less than two. It's a lifetime term of supervised release. Do we have to imply that from not less than two, which means all the way to life? Or is there some authority that says that? There are numerous courts, circuit courts, that have helped us. The Rogers case, which I cited in my 20HA letter, which was decided just this year, excuse me, just last year in 2008. The Mora case in the Second Circuit. And, indeed, more importantly, the legislative history in this, okay, in Congress. When Congress ‑‑ If a congressman says, if all the congressmen say, this is a terrible offense and people who do this offense, we should throw away the key for life, and then they write a statute that says the maximum penalty is three years, is the maximum penalty three years or life? I mean, I don't get that. What he is advocating, what the opponent is advocating is a combined reading between 960, which sets a floor of two years, and 3583B, which sets a ceiling of three. He's saying you have to read those two statutes. And why isn't that right? Because it's been rejected by ‑‑ Wait, wait. I'm sorry. Let me just amplify my question. The E3 says that it empowers, as you say, the district court to revoke supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute. It doesn't say limit which statute. It just says by statute for the offense that resulted in such terms. So you go to 960, which is clearly the offense statute, and the statute says you can go ‑‑ it's a minimum of two years. It doesn't say anything about a maximum. All right? So now the question is do we read 960 in conjunction with 3583 because 3583 is trying to decide prison time for revocation of supervised release. 960 is trying to ‑‑ is setting up what is the regime for prison, maximum five, and minimum and qualifying the setting of a floor on supervised release for sure. So you read those two together and you go further into 3583E and it puts a two‑year cap on the prison term that the district court can impose on revocation and specifically provides there shall not be any credit. You don't get any credit for your time out. It says you can give this guy two years when you revoke for the violation of supervised release. It does provide, however, that there is a cap on supervised release of three years. That's correct. That's for the amount of time that can be imposed. But for the amount of custodial time that can be imposed upon a revocation, there's no express limit on that. And because ‑‑ Ordinarily in the criminal law what you need is express authorization for the government to lock somebody up, not an express prohibition of the authorization. The law isn't generally that the Justice Department can have the courts lock somebody up forever  The only time ‑‑ there are only two places where these statutes say how long you can lock somebody up. 960 says in prison not more than five years. And the supervised release statute at 3583 says up to two years on any particular revocation. Up to three years. Your Honor, the statutes that have to be read together are not 3583. I think what they said was no more than two on a particular revocation, not three. They said so the person has some supervised release left over when he gets out. Yes. You're reading you go right from 3 to 960, and you're telling us Rogers and Mora both hold that there's no cap under 960 on supervised release, only a minimum. That's correct, Your Honor. And as I stated, the legislative history says so. I'm telegraphing that to your opponent so he can answer my question when he gets up, Mr. Rogers and Mora. The case that he cited in his brief, the good case, the Fourth Circuit case, the facts of that case involved a situation where 960 said no less than four, and 3583 said no more than five. And the court in that case said he got five years, so the court acted properly. Congress abrogated the good case expressly. It cited the case in the House Conference Report and said this is not the law. And the court said that they were amending the statute, and this is where they added the words. So do we use Scalia's approach and pay no attention to the legislative history and look at the plain text of the statute? Well, we are discussing the interpretation of the statute, and I think that the legislative history is very relevant here. Rogers' case, which was just decided last year in the Eighth Circuit, relied on the legislative history to resolve this issue. But I would point out that Congress said, and I'm quoting here, that it added the words notwithstanding Section 3583 of Title 18. It added those words to Section 960 to make clear that 3583 did not apply. And then Congress went on and said that the longer terms that are prescribed in 960 control over the general provisions in Section 3583. Thank you, Counsel. Thank you. Thank you, Your Honor. It's obviously very interesting to get back up here. I think you have my argument, essentially, on the plain language. So if I could just address three quick points. I'd like to begin with Cade and then go on to Judge Trott's question and then briefly address the 28J references that the government's attorney just addressed in terms of the legislative history. I'm very glad, Judge Kleinfeld, that you made me re-look at Cade, because I have looked at it for my briefs. And if we can talk, beginning on 466 and going up to 467, it really crystallizes my argument. It says that if a court imposes a term on 466 now of imprisonment that is less than three years, however, it may also require the defendant to serve an additional term of supervised release that cannot exceed the maximum term authorized by 3583B, minus, and here we go, the length of any term of imprisonment opposed upon a revocation of supervised release. What do you do with Rogers and Mora? If it please the Court, if I could just finish briefly Cade and then turn to Rogers and Mora. Thanks. I missed some of the language that you were just telling me from Cade. I saw what you wanted at the bottom of 466. I'm sorry. But then when I flipped over to 467, I couldn't find the rest. Okay. And then we see where that's actually put into practice, at the top of 467. And here, this is how it actually works in practice. The Court concluded that the maximum length of that term was 60 months, so that's the five years, less nine months of incarceration sentence opposed upon the second revocation, and less three months the incarceration sentence opposed upon the first revocation, or 48 months. That's exactly it. It's the two revocation sentences are aggregated. That aggregate amount is subtracted from the total amount of supervised release authorized by statute, and that's the balance that can be imposed. That's what I was saying inarticulately, admittedly, about the aggregation principle being applied in Cade, and that's essentially our argument. Turning to Rogers and Mora, and really to the 20- That's a description of what the district court did. Now, what does Cade say is supposed to be done? That's what Cade says can be done. It says, If the court imposes a term of imprisonment that is less than three years, however, it may require the defendant to serve an additional term of supervised release that cannot exceed the maximum term authorized by 3583. What does it say that cannot exceed the maximum term? It says in 466. Do you see the paragraph here on it that starts in sum? Oh, no. I was starting at the run-over paragraph at the end of the paragraph. I apologize. The paragraph at the beginning of 466 that starts in sum. I got it. Second sentence begins, if the court imposes, and then you'll see the 3583 reference to B1, the maximum term that cannot exceed five years, the term authorized by statute, 3583, B1, and here is where we get to exactly what we've been discussing, minus the length of any term of imprisonment opposed upon a revocation of supervised release. Any term, that aggregate amount is subtracted from the total amount authorized by statute, and that determines what can be imposed afterwards. And that's what I was talking about is the aggregation principle. So what you're saying is you've got three years max of total imprisonment. That's what I'm saying. And that's what the words of the statute says, and Kate is consistent with that. That's exactly my point. Got it. Okay. Thank you, Your Honor. And briefly addressing, and I'm sorry for Judge Schott. Well, take your time. I'm interested in Rogers and Mora. Okay. How do you handle those cases? Rogers and Mora. Okay. I did briefly look at the 28J last night, and it was actually pleasant for me because Rogers and Mora, Rogers, obviously these cases are not binding on this Court, but Rogers is based on Mora, and Mora, they all go. Have you read Rogers and Mora? I have. Okay. Go ahead. I have. I've read them both. And they both, Mora is, Mora is contrary to my readings. Right. Exactly right. Rogers does it with no analysis, and Rogers just bases itself on Mora. And they both kind of look at this legislative history that the government was just relying on. The part that says notwithstanding Section 3583 of Title 18. Yeah. Exactly. And I love this quote from, and I was able to pull it up. I went to 107 HRPT 685 in Lexis, and that's how I was able to get it. It took me a little while. But I was able to get it last night, and it says, to make clear that the longer terms they are prescribed, the longer terms of supervisory prescribing the drug statutes, control over the general provisions. Okay. That's what this Court has consistently held, the longer term. That's not this case. This case is the shorter term in 960, and it would be the shorter term in 841. The shorter term, that whole legislative history where they took the time, whatever weight you want to give it, they took the time to specifically see what they were doing. They cut out this whole, our situation. Here we have the shorter term, two years. Wow. And the longer term is in 3583. If they wanted to completely abrogate 3583's limit, surely, I mean, they would have said it somewhere. And here, what do they say? The only thing they say is the longer term, I mean, which is exactly our argument. The shorter term works together. Well, they seem to exclude 3583 altogether, though, notwithstanding 3583. That's what the statute says under 4. Well, Your Honor, I think that had they wanted to do that, why would they have taken the time to distinguish between the long? Like, this is all based on the Ng decision, right? Now you're talking about the history. And I'm talking about the history. I'm talking about the language that says notwithstanding. Well, but notwithstanding. It doesn't say longer or shorter. It just says notwithstanding. Are you talking in 960? Yeah, 964. Right, because notwithstanding means that when we look to 3583, because 3583 allows you to give you anything from zero to three years, right? That's what not more than three years means, zero to three years. And they say, look, notwithstanding that permission in D, in 3583, you have to give at least two years. I mean, that's really, I think, how the plain language works, at least two, but not more than three. And with that, unless there are further questions, I think you have my argument, and thank you very much. Thank you. Let me make sure I understand that. You read the notwithstanding language to mean if it weren't for this statute, you could give one year of supervised release. But because of this statute, notwithstanding the discretion you'd have under the other statute to give only one year, you're not allowed to give less than two. That's right. Is that right? As you were asking the question, Judge Trott was giving the numbers. That's a heck of a lot of mileage in Congress to get from one to two and two to one. I mean, it's, you know, not, Judge Kleinfeld, I think that is exactly the plain language of the statute. If it were not for the notwithstanding language, the judge would be allowed, the sentencing judge would be allowed to give one day or one year. But because of the notwithstanding, even though that permission is given in 3583, you can't give less than two. If they wanted it to be life, they should have said life. Although Mora is against us, it does it without analysis, and there is really the plain language. Within the four corners of the page I handed up to this Court, I think, is all the information that's needed to decide this case.  Thank you, counsel. Thank you. United States v. Ramirez is admitted. Next, we'll hear United States v. Flores-Perez.
judges: Trott, Kleinfeld, Fisher